# GRAFTON.

## JULY TERM, A. D. 1851.

---

## KEYES *v.* KEYES.

22   553
74   453

Marriage is a civil contract, and, like other contracts, requires the assent of the parties.

Fraud will vitiate the marriage contract.

A marriage contract will be invalid, if one of the parties be insane at the time.

Accordingly, where one of the parties was insane at the time of the marriage, and the insanity was unknown to the other, the same being concealed by the fraudulent practices of the friends of the insane party, with whom she resided, and who knew the fact of the insanity, the marriage was *held* to be invalid, and a decree of nullity of marriage was pronounced by this Court.

PETITION for a decree of nullity of marriage. The petition alleged that the petitioner first became acquainted with the petitionee, at Rumney, in Grafton county, on the 7th day of October, 1844; that the contract for their intermarriage was made about the 10th day of November, 1844; that said parties were married on the 2d day of December of the same year, and that the petitionee, at the time of entering into said contract, and at the time of the celebration of said marriage, and before, and since, and at the date of the filing of this petition, was insane. It further alleged, that, at the time of making said contract, and of the marriage, the petitioner had no knowledge or suspicion of the fact of her insanity.

The evidence fully established the truth of all the aforesaid allegations, showing her insanity as alleged, and that she had been an inmate of the insane asylum at Concord, in this State, prior to the time when the petitioner first became acquainted

with her, and also since their intermarriage. It further appeared, that, at the time of his visiting her, and of making the contract, she resided at a Mr. Palmer's, who married one of her sisters ; that he visited her there several times, and that when he thus visited her at said Palmer's, said Palmer and wife usually took her into a room apart from that into which the petitioner was invited, and caused her to remain there most of the time while he tarried.

It further appeared, that neither her sister, nor brother-in-law, nor any other member of the family ever informed him of the fact, or intimated to him that the petitionee had ever been insane.

After the filing of the petition in this case, and before the taking of the evidence, the Court appointed a *guardian ad litem* to attend the caption of the depositions, and to make the defence in behalf of the petitionee, and ordered the petitioner to furnish funds for that purpose.


*Quincy,* for the petitioner. The petitioner assumes, that the evidence proves the fact that the petitionee was insane at the time of the marriage, and at the time the marriage contract was made, without the knowledge of the petitioner.

Marriage is considered entirely in the light of a civil contract. 2 Kent Com. 87 ; 2 Greenl. Ev. 376 ; *Londonderry* v. *Chester,* 2 N. H. Rep. 278 ; *Clark* v. *Clark,* 10 Ib. 382.

No contract can exist, unless there is a mutual assent of the parties, and an intelligent understanding of its terms. Accordingly, the first incapacity recognized by law arises whenever the mental infirmity of either party precludes the possibility of a just appreciation of the terms of the agreement, or an intelligent assent to them. Story on Contracts, 13.

Without a competent share of reason, the matrimonial contract cannot be valid. 1 Black. Com. 438.

Lunatics are incapable of agreeing to any contract, and, of course, that of marriage. Marriage with a lunatic is absolutely void. 2 Kent. Com. 76. Lunacy is a sufficient cause for divorce. 2 Kent Com. 96 ; 2 Greenl. Ev. 380.

Keyes *v.* Keyes.

*W. C. Thompson,* for the petitionee.

Woods, J.  The jurisdiction of this Court, to pronounce a decree of nullity of marriage, was asserted and exercised in the recent case of *True* v. *Ranney,* 1 Foster's Rep. 52.

In that case a nullity of marriage was decreed, upon the ground that one of the parties was so imbecile as not to understand the nature of the contract.  In the present case, the Court are called upon to pronounce a decree of nullity, upon the two-fold ground of the insanity of the petitionee, and of the fraudulent devices and practices of her friends, employed for the purpose of concealing the fact of her insanity, and thereby leading and inducing him to enter into the contract of marriage with a lunatic.

It is not necessary in this case, to determine the question of the effect of the insanity of the petitionee upon the contract of marriage entered into by a party cognizant of the fact at the time of the marriage.

It will be sufficient to determine that question, when the same shall be brought before the Court for consideration by the party thus cognizant of the insanity of the other.  The present question arises upon the validity of the marriage contract, entered into by the petitioner in good faith and without fault or laches on his part, and in total ignorance of the insanity, and consequent incapacity of the petitionee to contract the same.

Upon the evidence in the case, it is quite clear that the contract has no binding force upon the petitionee, for the reason of her insanity.  It would, in such a case, be difficult to state a sound and valid reason upon which it could be holden; that, notwithstanding the invalidity of the contract, as to the petitionee, it may be regarded as of binding force, as to the petitioner.  If he had entered into, and consummated the contract, with full knowledge of the insanity of the petitionee, it would be thought but just to regard the contract as invalid, only at the election of the insane party.

In such a case, he should be holden to be estopped from denying the validity of the contract by reason of his wrongful act,

committed in entering into it. But it is not necessary, as we have seen, in the present case, to decide that the insanity alone of the petitionee, under the circumstances, would furnish a sufficient ground of relief against the consequences of the marriage contract, since there is, upon the proofs in the case, superadded to the insanity, the fact of the fraud practised upon an innocent party, through the cunning and artifice of the friends of the petitionee, in whose charge and under whose control she was at the time of the marriage. Fraud is an element which vitiates all contracts, and may be of a character to vitiate, and will vitiate even the marriage contract. And we do not hesitate to determine, that the fraud and imposition practised upon the petitioner in this case, by which he was led to enter into the marriage relation, with one well known to her friends to be wholly unfit, and legally incapacitated to contract that important relation, superadded to the fact of the existence of the infirmity under which she was laboring, causing the incapacity, of which the petitioner was wholly ignorant, furnish ample ground, and legal cause, for the exercise of the power of this Court, in decreeing the nullity of the marriage relation between these parties. The relation, whatever be its character, is without the assent of the party.

This is not a new application of the well-established principle that fraud will vitiate a civil contract. A similar application has been made and recognized in other jurisdictions. And, in modern times, the contract of marriage has been very generally, and very properly, regarded as a civil contract, requiring the assent of the parties.

Mr. Chancellor *Kent*, says, " The basis of the marriage contract is consent; and the ingredient of fraud, or duress, is as fatal in this, as in any other contract; for the free assent of the mind to the contract, is wanting." 2 Kent's Com. 66, 67.

In Connecticut, imbecility has been adjudged sufficient cause to dissolve a marriage, on the ground of fraud. *Benton* v. *Benton*, 1 Day's Rep. 111.

In *Portsmouth* v. *Portsmouth*, 1 Hagg. 355, the marriage was declared void, upon the ground of fraud and circumvention,

practised by the trustee and solicitor of a party of weak mind, in bringing about the marriage between him and his daughter. The jurisdiction, in such a case, belongs to the Ecclesiastical Courts in England. In New York, it is exercised by the Court of Chancery. The case of *Ferlat* v. *Gajon*, Hopkin's Chancery Rep. 478, was a bill filed to procure a decree of nullity of marriage, upon the ground of fraud in its procurement. The Chancellor remarks, " This is a case of marriage procured by fraud. Miss Ferlat was entrapped into a marriage with Gajon, by artifices which he employed, and though she gave an apparent consent, at the moment of the celebration, yet it fully appears that this consent was feigned. Here was no full consent, no voluntary consent, and this fraudulent marriage must be null."

And, in delivering his judgment in *Bartis* v. *Bartis*, Hopkin's Chancery Rep. 567, the Chancellor says, " Two decrees, annulling marriages, have been made by this Court, in cases not comprehended by our statutes concerning divorces. In the case of *Wightman* v. *Wightman*, 4 Johns. Ch. Rep. 343, one of the parties was a lunatic, and in the recent case of *Ferlat* v. *Gajon*, the marriage had been procured by an atrocious fraud. These marriages were clearly void, and this Court pronounced the sentence of nullity."

If the case under consideration was not to be regarded as coming within the provisions of chap. 148, § 2, Rev. Stat, relating to the subject of divorces, it nevertheless falls directly within those provisions of our statutes conferring jurisdiction upon this Court, as a Court of Equity, " in all cases of fraud, &c., where there is not a plain, adequate, and sufficient remedy at common law," &c., &c. Rev. Stat. chap. 171, § 6. No doubt exists, that this marriage might be treated as null and void by every Court in this State, in which the question of its validity might arise collaterally. The Courts of law in this State, may, doubtless, try and decide the question of the legality of a marriage contract, alleged to be void for the cause of fraud or otherwise, in any action or proceeding, properly falling within their jurisdiction. But the effect of the judgment of a Court of

47 *

law, would be only to determine the contract to be void, or valid, for the purpose of determining the controversy in which the question might be tried. It would be no farther conclusive, than as to the particular case in which the judgment was pronounced.

It is readily seen, then, that a remedy of so limited a character, would be wholly inadequate to meet the demands of justice, and to maintain the well-being and interests of society. Nothing short of a power resting somewhere, to determine questions of the character under consideration, for all purposes, can be regarded as furnishing an ample or adequate remedy, in cases like the present. Until such a decision shall be arrived at, reaching and deciding the question of the validity of the marriage for all purposes, and as between all persons, it may be litigated again and again, and the question may also receive different decisions, at the hands of different legal tribunals. No such partial remedy could be in any reasonable sense, treated as adequate. On the whole, we see no reason to doubt the power of the Court, heretofore exercised, to pronounce a decree of nullity of marriage in a proper case, nor that the fraud disclosed by the evidence in the present case, furnishes abundant grounds and reasons calling for its exercise.

We therefore order a decree of nullity of the contract of marriage to be entered, according to the prayer of the petition.*

*Decree entered accordingly.*

---

* The property of the wife, which had come to the possession of the petitioner, was, before the decree of nullity was entered of record, in accordance with a suggestion made by the Court, placed in the hands of a trustee, appointed to receive and manage the same, in behalf of the petitionee.